# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                     Case No. 09-Cr-147

QIAN L. COLLINS,

    Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT

## NATURE OF CASE

On June 9, 2009, a federal grand jury sitting in this district returned an indictment against defendant Qian L. Collins. The defendant is charged with possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). On June 29, 2009, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein for arraignment, entering a plea of not guilty. Pursuant to a pretrial scheduling order, the defendant filed several motions, all of which were resolved except for the defendant's motion to suppress physical evidence. (Docket #17). The defendant requested and received an evidentiary hearing on the motion. This motion will be addressed herein.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

On January 13, 2010, the court conducted an evidentiary hearing on the defendant's motion to suppress physical evidence. Milwaukee Police Officer Dwight McBride testified at the hearing on behalf of the government. The hearing was continued to January 28, 2010, at which time Edjuan Haywood testified on behalf of the defendant. Based on the testimony

presented at the hearings and the joint statement of uncontested facts submitted by the parties, the court now makes its findings of fact.

## Findings of Fact

On April 6, 2009, City of Milwaukee Police Officers Dwight McBride and Eric Nordstrom were in a marked squad car on routine patrol when they observed a two-door, 1975 Chevrolet Impala make an illegal u-turn at a controlled intersection. They conducted a traffic stop of the vehicle, which was being driven by Edjuan Haywood. Prior to making the stop, the officers activated their lights and observed a passenger throw a bottle out of the passenger side of the vehicle. The driver pulled over to the side of the road. The stop occurred at approximately 4:30 p.m., in the vicinity of Fond du Lac Avenue and Congress Street in Milwaukee, Wisconsin.

Five people were in the car when it was stopped. The defendant, Qian Collins, a passenger in the vehicle, was seated on the passenger side behind the front passenger seat. Mr. Haywood, the driver, had permission to drive the car, which belonged to his girlfriend Ms. Nickerson, but he had no ownership interest in the vehicle. Officer McBride approached the driver's side of the vehicle and his partner, Officer Nordstrom, went to the passenger side. Officer McBride advised the driver of two violations – that the driver had made an illegal u-turn and that a passenger had thrown a bottle out of the passenger side window.

Based on standard police procedure, Officer McBride asked the driver and the passengers for identification so the officers could check for outstanding warrants. The officers ran the names through the computer in their squad car and found out that the driver was on parole, had a valid driver's license, and had no warrants. The computer check revealed that

the defendant had an outstanding warrant. The officers did not arrest the defendant initially. After checking for warrants, the officers returned to the vehicle.

In response to Officer McBride's inquiry, the driver, Mr. Haywood, explained why he was on parole and stated that he had just been released from prison a few days before and he was not trying to go back to jail. Officer McBride asked Mr. Haywood for permission to search the vehicle. Officer McBride testified that the defendant gave the officers permission to search the car. According to Officer McBride, Mr. Haywood stated that if the officer wanted to search the car, he could do so. Mr. Haywood testified to the contrary. He testified that he told Officer McBride that the car did not belong to him, and so he could not give permission to search it. Mr. Haywood denied giving the officer permission to search the car. At that time, Mr. Haywood was talking to his girlfriend on his cell phone. Mr Haywood testified that he told Officer McBride that he could speak to his girlfriend to obtain permission to search, but Officer McBride declined to do so. Officer McBride could not recall if Mr. Haywood told him that the car did not belong to him.

Officer McBride ordered all the occupants out of the car. Each person was patted down for weapons and then directed to stand on the sidewalk next to the vehicle. The driver and the passengers were very cooperative. Officer McBride began to search the vehicle for weapons while all of the occupants, including the defendant, remained present. Officer McBride searched the driver's side and the front passenger's side of the car, including underneath the seats of the vehicle. He did not find anything.

Officer Nordstrom, who was standing with the passengers, alerted Officer McBride that one of the individuals was running away. When Officer McBride looked up, he saw Officer Nordstrom chasing the defendant. The defendant was not apprehended at that time.

Sometime thereafter, Officer McBride continued the search of the car and found a .22 caliber handgun on the floor of the rear passenger seat where the defendant had been sitting. No traffic citations were issued as a result of this stop.

## **Analysis**

The defendant makes three arguments in support of his motion to suppress all the evidence discovered during the search of the vehicle in which he was a passenger. First, with regard to his legal right to challenge the search, the defendant maintains that under Brendlin v. California, 551 U.S. 249 (2007), his status as a passenger in the vehicle grants him the right to challenge the legality of the initial traffic stop, as well as the officers' actions following the stop, including the search of the vehicle. Second, he contends that asking each of the vehicle's occupants for identification, having them all exit the vehicle, and searching the vehicle impermissibly exceeded the scope of the initial traffic stop. And third, the defendant asserts that Mr. Haywood, the vehicle's driver, never consented to a search of the vehicle.

In opposing the motion, the government argues that notwithstanding Brendlin, the defendant cannot challenge the search of the vehicle as he had no legitimate expectation of privacy in a vehicle he neither owned nor possessed at the time of the search. The government also maintains that the officers' actions following the initial traffic stop, including asking for each occupant's identification and removing the occupants from the vehicle, were reasonable in light of established legal precedent. Lastly, the government contends that regardless of any right-to-privacy issues, the testimony in this case establishes that the search of the vehicle was consensual and, therefore, permissible.

In Brendlin, 551 U.S. at 257-58, the Court held that when a police officer makes a traffic stop, any passenger in the vehicle is "seized" for Fourth Amendment purposes and, therefore,

the passenger may bring a challenge to the constitutionality of the stop. Despite the defendant's suggestion to the contrary, the Court in Brendlin did not hold that a passenger's ability to challenge the constitutionality of a traffic stop extends to a subsequent search of the vehicle, provided the passenger has not claimed a possessory or property interest in the vehicle or any property seized during the search. Thus, while Brendlin does offer a basis for the defendant to challenge the initial stop of the vehicle, it does no more than that.

In this case, the defendant does not dispute that the initial traffic stop was based on probable cause, given that the officers executing the traffic stop observed the vehicle making an illegal u-turn at a controlled intersection, as well as a bottle being thrown out a window of the vehicle. See Whren v. United States, 517 U.S. 806, 809-10 (1996) (citing Delaware v. Prouse, 440 U.S. 648, 659 [1979]); Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) ("As a general matter, the decision to stop an automobile is reasonable [under the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred."). In light of the reasonable nature of the initial traffic stop, the defendant's arguments based on Brendlin are inapposite.

The defendant next asserts that the police officers' actions following the stop were constitutionally impermissible, including asking the vehicle's occupants for their identification, asking them to exit the vehicle, and ultimately searching the vehicle. The court of appeals for this circuit has held, however, that "as part of [a traffic stop], police may ask the vehicle's occupants 'a moderate number of questions' and request their identification." United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005) (quoting Berkemer v. McCarty, 468 U.S. 420, 439 [1984]). Furthermore, the United States Supreme Court has held that following a lawful traffic stop, the Fourth Amendment permits police officers to protect themselves by ordering the
- 5 -

driver and any other occupants to exit the vehicle, pending completion of the stop. Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977) (driver); Maryland v. Wilson, 519 U.S. 408, 415 (1997) (passengers).

In this case, the officers did not ask the occupants to exit the vehicle until after they had run a warrant check on each of the occupants and discovered that the defendant had an outstanding warrant. In light of this discovery, the officers had grounds for requiring the defendant to exit the vehicle. Moreover, the officers were justified in asking the occupants to exit the vehicle. See Wilson, 519 U.S. at 415. Therefore, the court finds that asking for the defendant's identification and asking him to exit the vehicle did not violate the defendant's Fourth Amendment rights.

As for the vehicle search at issue, to properly challenge its constitutionality the defendant must show that he had a legitimate expectation of privacy in the vehicle searched or property seized. See Rawlings v. Kentucky, 448 U.S. 98, 104-06 (1980); Rakas v. Illinois, 439 U.S. 128, 148-49 (1978). He must do so because a defendant's Fourth Amendment rights are violated only when the challenged conduct invades the defendant's own legitimate expectation of privacy, rather than that of a third party. United States v. Payner, 447 U.S. 727, 731 (1980); United States v. Williams, 737 F.2d 594, 616 (7th Cir. 1984). Indeed, "[i]t is well-established that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" United States v. Fuesting, 845 F.2d 664, 671 (7th Cir. 1988) (quoting Alderman v. United States, 394 U.S. 165, 174 [1969]). Thus the burden is on the "proponent of the motion to suppress to establish a violation of *his own* Fourth Amendment rights by the challenged search and seizure." Fuesting, 845 F.2d at 671 (citing Rakas, 439 U.S. at 131 n.1) (other citations omitted).

The Court's decision in Rakas is relevant to this inquiry, as it addressed whether a vehicle's passengers have a legitimate expectation of privacy in the vehicle, thereby allowing them to challenge a police search of the vehicle. The Court held that passengers in an automobile who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," had no legitimate expectation of privacy in the automobile. 439 U.S. at 148. Without this expectation, the passengers could not challenge the search of the car in which they were riding. Id.

In this case, the defendant has not asserted any property or possessory interest in either the vehicle he was riding in, or the gun that was found during the subsequent search of that vehicle. It is undisputed that the vehicle belonged to Ms. Nickerson, the girlfriend of Mr. Haywood, the driver. The defendant has not satisfied the threshold requirements that would allow him to challenge the constitutionality of the vehicle search. Therefore, he has not established that the search of the vehicle infringed his Fourth Amendment rights. See Rakas, 439 U.S. at 148. Accordingly, the court finds that the defendant did not have a legitimate expectation of privacy in the vehicle and, thus, cannot challenge the search of that vehicle.

Even if the defendant could properly challenge the vehicle search, however, the court still would recommend that his motion to suppress be denied, based upon the facts that were established at the evidentiary hearing. Officer McBride testified in a forthright manner about the circumstances surrounding the stop and search of the vehicle. Officer McBride asked for permission to search the vehicle and he testified that Mr. Haywood gave consent to search the car. Mr. Haywood also testified in a straightforward manner and denied giving the officer consent to search. However, under the facts adduced at the hearing and the circumstances

of this case, the court finds the testimony of Officer McBride to be more credible than that of Mr. Haywood. Therefore, the court finds that the vehicle search was based on consent.

In sum, the court finds that the initial traffic stop was based on probable cause, and that the officers' subsequent actions were reasonable, making both permissible under the Fourth Amendment. The court also finds that the defendant had no legitimate expectation of privacy in the vehicle at issue in this case and, therefore, cannot challenge the constitutionality of the search of that vehicle. And lastly, the court finds that based on the testimony in this matter, the vehicle search was consensual. In light of these findings, the court will recommend that the defendant's motion to suppress the evidence obtained during the search of the vehicle be denied.

## **CONCLUSION**

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Qian L. Collins' motion to suppress physical evidence. (Docket #17).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within 14 days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 9th day of April, 2010.

>BY THE COURT:
>
>s/ Patricia J. Gorence
>PATRICIA J. GORENCE
>United States Magistrate Judge